IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERENCE L. JANNKE,

                Petitioner,

v.                                              OPINION and ORDER

DANIEL CROMWELL,                        22-cv-315-jdp

                Respondent.

---

Terence L. Jannke, appearing pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions for first-degree reckless homicide, maintaining a drug trafficking place as a party to a crime, and possession of heroin with intent to deliver. *See* Dodge County Case No. 2016CF3473; *State v. Jannke*, No. 2018AP2277, 2021 WL 8533940, at *1 (Wis. Ct. App. Mar. 11, 2021). The charges were based on Jannke delivering heroin to victim H.N., who died after taking it.[1]

After reviewing the petition I concluded that Jannke procedurally defaulted his claims: Jannke concedes that he did not present his claims to every level of the Wisconsin court system, because his petition for review in the Wisconsin Supreme Court was dismissed for being untimely. Dkt. 3. I directed Jannke to show cause why the court should excuse his procedural default. Jannke has responded to my order, contending that (1) prison staff misled him about the filing date for his petition to the Wisconsin Supreme Court; (2) new evidence shows that he didn't deliver the heroin to the victim; (3) new evidence shows that the heroin was not a substantial factor in the victim's death; and (4) an intervening change in the Wisconsin jury

---

[1] In keeping with the court of appeals' decision in Jannke's case, I will refer to the victim by her initials.

instructions changes the legal standard in mixed-drug-toxicity cases. None of these arguments are persuasive, so I will dismiss his habeas petition as procedurally defaulted.

## ANALYSIS

### A. Cause for late filing to Wisconsin Supreme Court

As I explained in my previous order, one way for Jannke to overcome his procedural default would be to show cause and prejudice for his failure to exhaust his claims. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). That requires showing that there was "some objective factor external to the defense" that prevented him from pursuing his claim in state court. *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003).

Jannke renews his argument that there was cause for his two-day late filing of his petition for review: he now states that prison law librarian calculated the wrong deadline date when allocating him library time, leaving him to believe he had four more days than the deadline as stated by the Wisconsin Supreme Court in rejecting his petition. In my previous order I stated that incorrect legal advice from a fellow inmate wouldn't be enough to show cause. Dkt. 3, at 2 (collecting cases). The fact that the incorrect advice came from prison staff instead of another inmate doesn't change the outcome. Jannke's own ignorance of the Wisconsin procedural rules is not enough to show cause. *See Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003). And he isn't entitled to correct legal advice from prison staff or anyone else, as he was not entitled to the affective assistance of counsel concerning his petition for review. *See Parkhurst v. Shillinger*, 128 F.3d 1366, 1371 (10th Cir. 1997) ("[P]etitioner asserts, as cause for his default, that the state deliberately interfered with his right to access the courts by providing misleading legal advice. Petitioner was not entitled to assistance of counsel in his

postconviction proceeding. Any failure to assist petitioner in this regard would therefore not amount to a violation of constitutional magnitude and, as such, cannot provide the cause necessary to excuse petitioner's procedural default." (citation omitted)).

**B. Actual innocence**

Courts can also excuse a petitioner's procedural default if the petitioner can show that dismissal would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). Jannke says that he is actually innocent of the charges against him. The actual-innocence gateway to excusing procedural default "is demanding and permits review only in the 'extraordinary' case." *Blackmon v. Williams*, 823 F.3d 1088, 1100–01 (7th Cir. 2016). To qualify for this narrow exception, Jannke "must have 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup*, 513 U.S. at 324)); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim."). The evidence of innocence must be so strong that "in light of the new evidence . . . more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). To be "new," the evidence does not need to be "newly discovered," but it must not have been presented at trial. *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015).

The new evidence that Jannke presents is the affidavit of an eyewitness, Joshua Anderson, who trial counsel failed to call at trial. Dkt. 5. Anderson states that he and Jannke purchased heroin from H.N. and Gabriel Brandl, contradicting Brandl's testimony that he and

3

H.N. bought the heroin from Jannke and Anderson. *Id.* at 1. Anderson states that H.N. was already "nodding out" and "badly slurring her words," before H.N. took any heroin. Anderson also states that the heroin was "of very low quality." *Id.* Jannke states that Anderson's testimony affects two of the elements of the homicide charge: (1) whether he delivered the heroin to H.N. and (2) whether the heroin was a "substantial factor" in H.N.'s death. *See* Wis. JI-Criminal 1021 (First-degree reckless homicide, § 940.02(2)) ("This requires that use of the controlled substance was a substantial factor in causing the death.")

New testimony from an eyewitness that simply contradicts another eyewitness is generally not the type of evidence that can establish actual innocence. *See Smith v. McKee*, 598 F.3d 374, 388 (7th Cir. 2010); *see also Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005). At trial there was only one eyewitness disputing Anderson's account of the transaction—Brandl, who testified that he and H.N. bought the heroin from Jannke. But there was additional evidence supporting Jannke selling the heroin rather than buying it. Jannke's roommate testified that he had overheard Jannke speaking "'on the phone or to somebody how he had the good heroin that killed that girl,'" and a police officer testified that a regular heroin purchaser of Jannke's stated in a recording "that Jannke 'had told her that he was the one that gave Gabriel Brandl the heroin . . . that Gabe gave to [H.N.]'" *Jannke*, 2021 WL 8533940, at *2 (alterations in original). Anderson's testimony fails to establish that no reasonable jury could find that Jannke provided H.N. with the heroin.

Jannke also argues that had Anderson been called at trial there would not have been sufficient evidence to prove that the heroin was a "substantial factor" in H.N.'s death, because Anderson testified that the heroin was of low quality and because H.N. was already impaired by another drug (fluoxetine) by the time she took the heroin. He notes that the expert

4

testimony at trial was already in conflict, with county medical examiner Kristinza Giese testifying that the cause of H.N.'s death was acute heroin intoxication and his own expert, Richard Tovar, testifying that "it is not medically possible to discern if heroin was a substantial factor in causing HN's death," Dkt. 4 at 11 n.6. Jannke argues that Anderson's testimony significantly undercuts Giese's expert testimony. According to Jannke, Giese testified that "one of the most important things is we take into consideration is the history, if they are groggy or have certain symptoms and that that is something she takes in account that could be or what would be leading up to the cause of death," Dkt. 4, at 19. I take Jannke to be arguing that Giese might have come to a different conclusion if she had heard Anderson's testimony that H.N. was already groggy from fluoxetine before taking heroin. And Jannke argues that the toxicology evidence was already thin, with it being undisputed that H.N. took a "half dose" of heroin and with H.N.'s toxicology report showing a concentration of heroin within therapeutic levels of morphine while H.N.'s concentration of fluoxetine was above the level ordinarily considered toxic.

      Anderson's testimony simply is not the kind of striking new evidence contemplated in *Schlup* that would be necessary to show that Jannke was actually innocent of the offense. Giese was already aware of the significant amount of fluoxetine in H.N.'s system, but nonetheless concluded that she died of heroin intoxication, so it's unclear how testimony that H.N. was impaired by the significant amount of fluoxetine would make a material difference. Even if Anderson's testimony somewhat undercut Giese's conclusions, it wouldn't be enough to meet the stringent actual-innocence requirement here that any juror would have a reasonable doubt whether the heroin was a substantial factor in H.N.'s death. A juror wouldn't have to pick between whether fluoxetine or heroin killed H.N.: they could have concluded that it was the

combination of the two drugs. As the jurors were instructed, "This requires that the use of a controlled substance was a substantial factor in causing the death. There may be more than one cause of death. The influence of one person might produce it or the acts of two or more persons might jointly produce it." *Jannke*, 2021 WL 8533940, at *2. So even given Jannke's summary of the evidence submitted at trial, the addition of Anderson's testimony wouldn't be enough to give all possible jurors reasonable doubt under the theory that the fluoxetine alone killed H.N.

Jannke's final actual innocence argument isn't grounded in new evidence but rather what he contends is a change in the law, because the jury instruction for reckless homicide by delivery of controlled substance was amended after his conviction. Instead of the instruction at Jannke's trial stating, "There may be more than one cause of death. The influence of one person might produce it or the acts of two or more persons might jointly produce it," the instruction now reads, "A substantial factor need not be the sole or primary factor causing death. There may be more than one cause of death. The use of one substance may produce it, or the use of two or more substances might jointly produce it." Wis. JI-Criminal 1021.

The court of appeals has noted that it "has never explicitly held that [the actual-innocence exception to procedural default] can be used in situations where a subsequent change to the scope of a law renders the conduct the petitioner was convicted for no longer criminal." *Lund v. United States*, 913 F.3d 665, 667–68 (7th Cir. 2019). Even if a change in the law can be used to excuse procedural default, Jannke fails to show that the amended jury instruction is actually a change in the law—he doesn't point to any case law or statutory alterations driving this change, and I am aware of none. But even if I considered an amendment to a jury instruction to be a true change in the law under this theory, Jannke doesn't adequately explain

6

how there is a material difference in the two versions of the jury instruction leading to the conclusion that he is actually innocent. Both versions explain that there can be more than one substantial factor in someone's death; the newer version makes even more clear that a person can be convicted without the drug they delivered being the sole cause of the victim's death.

Jannke argues that because new language was also added to the instruction explaining how juries should treat controlled substances mixed with other materials, the jury instruction committee intended for the "more than one cause of death" language to apply only to circumstances in which there was a substance mixed with other materials—like heroin laced with fentanyl—and not to apply in cases like his, where two different people provided the victim with two separate controlled substances. Jannke's logic on this issue isn't persuasive and he cites no Wisconsin authority supporting this interpretation. Rather, this language is consistent with Wisconsin courts' routine acknowledgement that under § 940.02(2)(a) a controlled substance need not be the sole cause of the victim's death. *See, e.g.*, *State v. Holder*, 2021 WL 608371, 2021 WI App 20 (unpublished); *State v. Johnson*, 2016 WI App 80, ¶ 3, 2016 WL 5171984 (unpublished).

Because Jannke fails to show that he is actually innocent, he cannot overcome his procedural default, so I will dismiss his petition.

**C.  Certificate of appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the

petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because I find that no reasonable jurist would debate whether Jannke procedurally defaulted his claims, the court will not issue petitioner a certificate of appealability. Petitioner may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1. Petitioner Terence L. Jannke's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DISMISSED.

2. Petitioner is DENIED a certificate of appealability. He may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered June 27, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge